Filed 1/30/14  P. v. Roush CA3

### NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CODY JAMES ROUSH,<br><br>    Defendant and Appellant. | C069954<br><br>(Super. Ct. Nos.<br>62105688 & 62109736) |

A jury found defendant Cody James Roush guilty of two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a); counts one and two)[1] and found true allegations defendant inflicted great bodily injury in the commission of the assaults (§12022.7, subd. (a)).  The trial court sentenced defendant to 11 years in state prison, consisting of 4 years on count one, a consecutive 1 year (one-third the middle term) on count two, and a consecutive 3 years on each of the great bodily injury enhancements. Immediately thereafter, defendant pleaded no contest to two counts of resisting an executive officer (§ 69) in an unrelated matter in exchange for the dismissal of the

---

[1] Further undesignated statutory references are to the Penal Code.

1

remaining charges, and the trial court sentenced him to 8 months in state prison on each count to run consecutive to the term imposed on the assaults, for an aggregate prison term of 12 years and 4 months.

Defendant, who represented himself at trial and sentencing, appeals, contending the trial court erred in failing to conduct a second competency hearing to determine his competence to stand trial, allowing him to represent himself without considering whether he was competent to do so, and imposing a full three-year term for the great bodily injury enhancement on the second assault. He also asserts the prosecutor prejudicially erred by appealing to the jury's passions and asking the jury to draw inferences based on defendant's self-representation.

We shall conclude the trial court erred in imposing a full three-year term for the great bodily injury enhancement appended to count two, modify the judgment to reflect defendant was sentenced to one year (one-third the middle term) for that enhancement, for an aggregate term of 10 years and 4 months in state prison and affirm the judgment as modified.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Assaults*

In March of 2011, Eric Davis was renting a room from defendant's mother, a Davis family friend. Defendant stopped by his mother's home a couple of times a week. Although Davis had known defendant's mother for eight years, he had just met defendant. On March 25, 2011, Davis and defendant were outside defendant's mother's home talking. Defendant held the door for Davis as Davis went inside the house, and hit Davis in the back of the head once Davis was inside. Davis fell to the floor, and defendant struck him three or four more times with what appeared to be a crowbar. A complaint was filed charging defendant with assaulting Davis with a deadly weapon and specially alleging defendant personally inflicted great bodily injury in the commission of that offense.

2

In April 2011, Alexx Stanner was living in an apartment with his girlfriend. Defendant's sister lived in the apartment above Stanner's, and Stanner knew of defendant from high school. On April 10, 2011, defendant knocked on Stanner's door around 8:00 p.m. and asked if he could "hang out." When Stanner explained he was watching a movie with his girlfriend, defendant stabbed him in the abdomen with a knife. As Stanner fell to the floor, defendant kicked him in the face and left. A complaint was filed charging defendant with assaulting Stanner with a deadly weapon and specially alleging defendant personally inflicted great bodily injury in the commission of that offense. On June 9, 2011, at the outset of the preliminary hearing in that matter, defendant's motion to represent himself was granted. Following the hearing, defendant was held to answer.

On June 29, 2011, at the outset of the preliminary hearing in the Davis matter, defendant's counsel declared doubt as to defendant's competency, criminal proceedings were suspended in both the Davis and Stanner matters, and Dr. Sidney Nelson was appointed to evaluate defendant pursuant to section 1368. At the competency hearing on August 3, 2011, defendant waived his right to a jury trial, and the parties submitted the issue on Dr. Nelson's report. The court found defendant competent to stand trial and reinstated the proceedings in both matters. Additional facts concerning Dr. Nelson's report and defendant's competency are set forth below in the discussion of his claims.

On August 15, 2011, defendant's motion to represent himself was granted in the Davis matter, and the public defender was appointed standby counsel. Following the preliminary hearing in that matter, defendant was held to answer.

On September 29, 2011, trial commenced in the Stanner matter. A mistrial was declared after the jury was unable to reach a verdict.

On November 2, 2011, the Davis and Stanner matters were consolidated, and defendant's request to represent himself in the consolidated action was granted.

On November 9, 2011, trial commenced in the consolidated action, and on November 14, 2011, a jury found defendant guilty as charged.

3

*B. The Incidents at the Jail*

Meanwhile, on or about October 22, 2011, defendant punched a deputy sheriff in the side of the head at the Placer County Jail. A complaint was filed charging defendant with, among other things, resisting an executive officer, and defendant's motion to represent himself in that matter was granted.

On October 27, 2011, defendant swung at a correctional officer as the officer was transporting him to the law library. A struggle ensued during which the officer was injured. A complaint was filed charging defendant with, among other things, resisting an executive officer, and defendant's motion to represent himself in that matter was granted.

The two matters concerning incidents at the jail later were consolidated.

*C. Sentencing*

After granting defendant's motion to represent himself at sentencing on the assaults, the trial court imposed an aggregate term of 11 years in state prison, consisting of 4 years for assaulting Stanner (count one), plus a consecutive 3 years for the great bodily injury enhancement appended to that count one, and a consecutive 1 year (one-third the middle term) for assaulting Davis (count two), plus a consecutive 3 years for the great bodily injury enhancement appended to that count. Following defendant's sentencing on the assaults, he pleaded no contest to two counts of resisting an executive officer in exchange for dismissal of the remaining charges, and the trial court sentenced defendant to 8 months in state prison for each offense, to run consecutive to his sentence for the assaults, for an aggregate prison term of 12 years and 4 months.

DISCUSSION

I

The Trial Court Did Not Err in Failing to Order a Second Competency Hearing

Defendant contends the trial court committed reversible error by failing to conduct a second competency hearing given "the persistent evidence of [defendant's] mental instability . . . ." We disagree.

4

On June 29, 2011, defendant's counsel declared a doubt as to defendant's competency pursuant to section 1368.[2]  The trial court (Judge Nichols) suspended criminal proceedings in both the assault cases and set the matters for appointment of a doctor to evaluate defendant.  On July 6, 2011, the trial court (Judge Kearney) appointed Dr. Sidney Nelson to examine defendant pursuant to section 1368.

Dr. Nelson submitted a psychological report, dated July 21, 2011, in which he concluded defendant was competent to stand trial.  Dr. Nelson found "no evidence to indicate a formal thought disorder."  According to Dr. Nelson, defendant's "associations were intact.  He was alert, coherent and well oriented.  His communications were logical and goal directed.  His thinking was never vague or tangential.  His speech and communications were never disorganized.  During the assessment, there was no evidence to indicate any delusions or hallucinations.  There was no pathological thought content.  The defendant did not exhibit any bizarre or peculiar behaviors or mannerisms during the examination.  His mood showed normal variation.  His affect was appropriate.  His recent and remote memory functions appear to be grossly intact.  There was no evidence to indicate any significant sensory impairment.  He denies any suicidal or homicidal ideation.  His insight and judgment overall are likely fair.  [Defendant] was impulsive in his behavior throughout the examination.  He was often times restless and fidgety in his chair.  He was not, however, excessively distractible.  His concentration skills appear to be adequate."  With respect to defendant's understanding of the current criminal proceedings, Dr. Nelson found:  "[T]he defendant has a clear understanding of the charges against him and he also has an understanding in terms of the appreciation of

---

[2]  Section 1368 states in pertinent part:  "If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369."  (§ 1368, subd. (b).)

possible penalties in his case. He understands the roles of the judge, prosecutor and defense attorney. He seems to have a basic understanding of courtroom procedures. The defendant is also motivated to help himself in the legal process, and he also appears to have a basic ability to plan a legal strategy with his attorney. The defendant appears to have the capacity to disclose pertinent information to his attorney and the capacity to challenge prosecution witnesses."

On August 3, 2011, defendant, represented by counsel, waived jury trial of the competency matter and submitted the issue on Dr. Nelson's report. The trial court (Judge Kearney) found defendant competent to stand trial and reinstated criminal proceedings.

Both the due process clause of the Fourteenth Amendment to the United States Constitution and state law prohibit the trial of a criminal defendant while he or she is mentally incompetent. (*People v. Ary* (2011) 51 Cal.4th 510, 517-518 (*Ary*); § 1367, subd. (a).) "A defendant is deemed competent to stand trial only if he ' "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" ' and ' "has a rational as well as factual understanding of the proceedings against him." ' [Citation.]" (*Ary, at* p. 517; see also § 1367, subd. (a) ["A defendant is mentally incompetent for purposes of this chapter if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."].) "When a trial court is presented with evidence that raises a reasonable doubt about a defendant's mental competence to stand trial, federal due process principles [(as well as state law)] require that trial proceedings be suspended and a hearing be held to determine the defendant's competence. [Citations.] Only upon a determination that the defendant is mentally competent may the matter proceed to trial." (*Ary,* at p. 517; see also § 1368,

subd. (a).)[3]  Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations.  (*People v. Rogers* (2006) 39 Cal.4th 826, 847 (*Rogers*).)  The court's duty to conduct a competency hearing may arise at any time prior to judgment.  (*Ibid.*)

" ' "When a competency hearing has already been held and defendant has been found competent to stand trial, . . . a trial court need not suspend proceedings to conduct a second competency hearing unless it 'is presented with a substantial change of circumstances or with new evidence' casting a serious doubt on the validity of that finding. [Citations.]" '  [Citation.]"  (*People v. Taylor* (2009) 47 Cal.4th 850, 864 (*Taylor*).)  Failure to declare a doubt and to conduct a competency hearing when there is substantial evidence of incompetence requires reversal of the judgment.  (*Rogers, supra,* 39 Cal.4th at p. 847.)

Here, defendant argues his "repeated insistence that the evidence presented by the prosecution was insufficient as a matter of law" constituted "new evidence" requiring the trial court to order a second competency hearing.  In particular, he notes that "[t]hroughout the proceedings [he] insisted despite admonitions by the trial [court] that the alleged victims in the case could not be witnesses; that the stabbing could not be proved without DNA evidence; and that the assault on Davis could not be proved without recovering the weapon."

---

[3]  As relevant here, section 1368 provides:  "(a) If, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent.  If the defendant is not represented by counsel, the court shall appoint counsel.  At the request of the defendant or his or her counsel or upon its own motion, the court shall recess the proceedings for as long as may be reasonably necessary to permit counsel to confer with the defendant and to form an opinion as to the mental competence of the defendant at that point in time."

The evidence cited by defendant is not new. At the preliminary hearing on June 9, 2011, defendant twice expressed his belief that "a statement alone" is not sufficient proof to get past the preliminary hearing. He also argued probable cause was lacking because "there is no connection between me and the knife" and "[t]here is no DNA." Defendant claims that while the statements themselves may not have been new, his repeated reliance on the same constitutes "new evidence that [he] was suffering from mental illness that prevented him from participating in his defense in a reasonable manner." Not so. Defendant's decision to pursue a legally flawed defense theory, even after being advised of the theory's illegality, does not constitute *any* evidence of incompetency. The theory itself--that a victim's statement does not constitute evidence, or more generally, that the prosecution's evidence is insufficient as a matter of law to support a conviction--while inaccurate, is not delusional. Given the evidence against him, including the victims' statements, defendant may have believed such a strategy was the best way to proceed. Indeed, the first trial of the Stanner assault resulted in a hung jury.

*People v. Melissakis* (1976) 56 Cal.App.3d 52 (*Melissakis*), cited by defendant, is distinguishable on the facts. There, the defendant was found to be competent to stand trial during pretrial proceedings based on psychiatric reports prepared by two psychiatrists. (*Id.* at pp. 55-56.) A third psychiatrist, Dr. Cutting, believed defendant "was laboring under a 'delusional system' " and "was not capable of trusting another person sufficiently to present an adequate defense." (*Id.* at p. 56.) Thereafter, additional factors came to light that completely undermined the medical opinions upon which the competency finding was predicated. Specifically, "[o]n the morning of the trial, [defendant] asked for a substitution of attorneys, explaining that he was disturbed with his counsel because the attorney was not cooperating with him; this request was consistent with Dr. Cutting's opinion that [defendant] was not capable of trusting another person sufficiently to present an adequate defense. [¶] Then, on the third day of trial, [defendant] made a bizarre request which, per se, should have triggered a suspicion in the

8

judge's mind as to [defendant's] present sanity; he asked the judge to subpoena two issues of Playboy magazine, several newspaper articles and various individuals and organizations, including a Women's Liberation organization, so that he could prove that there was a conspiracy against him. It was this bizarre request which prompted [defendant's] trial counsel to make a motion for the reconsideration of the present sanity issue. [¶] After counsel's motion for a second sanity hearing was denied, [defendant] took the stand and testified in his own behalf. His pathetic testimony vividly demonstrated that he was suffering from a serious mental illness and that the mental illness gave birth to a delusion of the kind that could have made it impossible for [defendant] to understand, fully, his predicament and to assist his trial counsel in presenting a rational defense. [¶] During the sanity phase of the trial, all of the doctors agreed that appellant had a serious mental illness and that he honestly believed in the conspiracy he described; [the two doctors who previously found defendant competent to stand trial] explained that they did not realize until after hearing [defendant's] testimony during the guilt phase of the trial that [he] was suffering from a mental illness. Up to that time [defendant] had refused to comment upon any of the events leading up to or surrounding the shooting, including his belief in the conspiracy." (*Id.* at pp. 60-61.) In reversing the judgment, the court found, "[i]t seems clear that the trial judge should have made further inquiry into the present sanity issue, if not during the trial, then at least prior to the imposition of sentence." (*Id.* at p. 61.) By failing to do so, the trial court committed reversible error. (*Id.* at p. 62.) Defendant's insistence in the present case that a victim's statement is not evidence is nothing like the "bizarre," "pathetic" behavior described in *Melissakis*.

Finally, evidence concerning the nature of the assaults themselves-- that they were "unprovoked assaults against known people with no plausible explanation for the violence"--did not compel a second competency hearing. A defendant is mentally incompetent to stand trial "if, as a result of mental disorder or developmental disability,

9

*the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.*" (§ 1367, subd. (a), italics added.)  Even assuming the nature of the crimes suggested defendant may suffer from a mental disorder, that alone did not require the trial court to inquire further.  The question is whether the evidence before the trial court suggested defendant was unable to understand the nature of the proceedings or to assist counsel in the conduct of a defense.  (*Ibid.*; § 1368, subd. (a); see *People v. Hofferber* (1977) 70 Cal.App.3d 265, 269.)  The evidence relied on by defendant was presented at trial.  By that time, the trial court had numerous opportunities to observe defendant in court.  Thus, even assuming the nature of the crimes themselves suggested defendant may have been suffering from a mental disorder at the time the crimes were committed, there is no indication in the record that defendant was unable to understand the nature of the criminal proceedings or to assist in his defense.

Having reviewed the record on appeal, we find no evidence, new or otherwise, that casts a serious doubt on the trial court's initial competency finding.  Accordingly, the trial court did not err in failing to order a second competency hearing.

## II
## The Trial Court Did Not Err in Granting Defendant's Request to Represent Himself

Defendant next contends "[t]he trial court committed reversible error when it used an improper standard in determining whether [he] could appropriately represent himself in the trial of the cases."  In particular, he complains the trial court applied the wrong standard in granting his first request, citing the trial court's statement that "if the person is qualified to be in court at all, . . . then they meet the standard to represent themselves according to the Supreme Court."  He also asserts the subsequent grants "were made without considering [his] competency despite clear evidence that [he] did not have a rational understanding of proceedings sufficient to represent himself at trial."  As we shall explain, there was no error.

10

In *Indiana v. Edwards* (2008) 554 U.S. 164, 174, 177, 178 [171 L.Ed.2d 345] (*Edwards*), the United States Supreme Court held that states may, but do not need to, deny self-representation to defendants who, although competent to stand trial, "suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." (*Id.* at p. 178.)  In *Taylor*, *supra*, 47 Cal.4th at pages 877-878, our Supreme Court held that *Edwards* did not mandate a higher standard of mental health for self-representation than is required for competency to stand trial, so long as the defendant's waiver of counsel was, inter alia, knowing and intelligent.  The court also concluded that at the time of trial in that case, i.e., early 1996, "[California had not] set a higher or different competence standard for self-representation than for trial with counsel," therefore, under state law, the trial court's use of the same standard in granting self-representation was not error.  (*Taylor,* at pp. 866, 867-868, 878-880.)

In *People v. Johnson* (2012) 53 Cal.4th 519, 528, decided *after* defendant was sentenced (and *after* his various motions to represent himself had been granted), our Supreme Court held that a trial court has discretion to deny self-representation to defendants who, while competent to stand trial, suffer from severe mental illness to the point where they are not competent to conduct trial proceedings themselves.  (*Id.* at pp. 528, 530.)  The court also concluded, "A trial court need[s to] . . . inquire into the mental competence of a defendant seeking self-representation . . . only if it is considering denying self-representation due to doubts about the defendant's mental competence." (*Id.* at p. 530.)

At the time the trial court granted each of defendant's requests for self-representation in this case, state law provided the trial court with no test of mental competence to apply other than the standard of competence to stand trial.  Accordingly, the trial court did not err in applying that test in granting defendant's initial request to represent himself or in granting defendant's subsequent requests without applying a

11

higher standard than competence to stand trial. (*Taylor, supra*, 47 Cal.4th at pp. 850, 879.)

### III
### The Prosecutor Did Not Commit Prejudicial Error During Closing Argument

Defendant argues the prosecutor prejudicially erred during closing argument by inviting jurors to put themselves in the victim's position and imagine what the victim experienced and by criticizing defendant's "assertion of his right to represent himself." More particularly, defendant points to the prosecutor's reference to defendant's cross-examination of Stanner during which the prosecutor asked the jury to "imagine what Alexx [Stanner] was going through in that moment. Here he is on the witness stand reliving the moment when he was stabbed, and now he's being examined by the person who did it, the person who stabbed him, and that person has the audacity to tell Mr. Stanner, 'I wasn't there.' That's how Mr. Stanner reacted, complete, utter disbelief that the defendant had the nerve to say, 'I wasn't even there. What are you talking about?' " As we shall explain, defendant forfeited the issue by failing to raise it below, and in any event, there was no error.

Defendant failed to object to any of the challenged comments, and any harm arising from them could have been cured by an admonition. Therefore the issue is forfeited on appeal. (See *People v. Earp* (1999) 20 Cal.4th 826, 858-859; *People v. Stansbury* (1993) 4 Cal.4th 1017, 1056, revd. on other grounds in *Stansbury v. California* (1994) 511 U.S. 318, 325–326 [128 L.Ed.2d 293].)

Even if defendant had preserved his claim, it lacks merit. "[A]n appeal to the jury to view the *crime* through the eyes of the victim is misconduct at the guilt phase of trial . . . ." (*People v. Stansbury*, *supra*, 4 Cal.4th at p. 1057, italics added.) Here, the prosecutor did not ask the jury to view the *crime* through Stanner's eyes; she asked the jury to view the *cross-examination* through Stanner's eyes to explain Stanner's demeanor while testifying, particularly his anger and frustration. She told the jury she wanted to

12

take them "back to the moment with Mr. Stanner when he got into the argument with the defendant during cross-examination" and asked them to "imagine what Alexx [Stanner] was going through in *that* moment," not the moment he was stabbed. (Italics added.) She argued "that anger and frustration from Alexx [Stanner] was honest emotion of the disbelief," and asked the jury to "[k]eep that in mind when you evaluate the witnesses and their testimony." The prosecutor's comments in this regard were proper.

Moreover, contrary to defendant's assertion, nothing the prosecutor said reasonably could be construed as criticizing defendant's exercise of his constitutional right to represent himself.

Accordingly, defendant's claim the prosecutor committed reversible error during closing argument fails.

## IV
### Defendant's Sentence for Inflicting Great Bodily Injury in the Commission of the Assault on Davis (Count Two) Must Be Reduced to One Year

Finally, defendant contends, and the Attorney General concedes, the trial court incorrectly imposed a full-term great bodily injury enhancement on a consecutive subordinate determinate term sentence. In particular, the trial court identified count one (the Stanner assault) as the principal term. In sentencing defendant on the assault conviction in count two (the Davis assault), the trial court imposed a consecutive subordinate term of one year, i.e., one-third the middle term of three years. The trial court then imposed a consecutive term of three years on the great bodily injury enhancement under section 12022.7, subdivision (a). The trial court should have imposed one-third the three-year term, or one year, on the great bodily injury enhancement because the enhancement was imposed on a count for which the trial court imposed the subordinate term. (§ 1170.1, subd. (a); see also *People v. Felix* (2000) 22 Cal.4th 651, 655.) We will modify the sentence on count two, accordingly.

13

Defendant's sentence is modified by reducing the three-year term on the section 12022.7, subdivision (a) great bodily injury enhancement imposed on count two (labeled as count "A-2" in the abstract of judgment) to a term of one year.  As modified, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment that reflects the modification to defendant's sentence on count two, and to forward copies of that amended abstract to the Department of Corrections and Rehabilitation.


                                                  __BLEASE__, Acting P. J.


We concur:


        __NICHOLSON__, J.


        __BUTZ__, J.